UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Lee Shorter,

                          Petitioner,

    -vs-

Michael Corcoran,
Superintendent,

                          Respondent.

**DECISION AND ORDER**
**No. 05-CV-0417T**

_____

## I. Introduction

*Pro se* petitioner Lee Shorter ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered January 28, 2003, in the County Court, State of New York, Ontario County, convicting him, after a jury trial, of Criminal Sale of a Controlled Substance in the Third Degree (New York Penal Law ("Penal Law") § 220.39(1)) and two counts of Criminal Possession of a Controlled Substance in the Seventh Degree (Penal Law §220.03). For the reasons stated below, the petition is denied.

## II. Factual Background and Procedural History

The charges arise out of an incident that occurred on June 20, 2002 in which Petitioner sold crack-cocaine to a confidential police informant.

By Ontario County Indictment Number 02-07-130, the grand jury charged Petitioner with one count each of Criminal Possession of a Controlled Substance in the Third Degree, Criminal Sale of a Controlled Substance in the Third Degree, and Criminal Possession of a Controlled Substance in the Seventh Degree. Petitioner was offered a plea deal, but elected to proceed to trial before the Honorable Craig J. Doran on January 21, 2003.

**A. The Trial**

**1. The People's Case**

On June 19, 2002, Victor Fantauzzi ("Fantauzzi"), a confidential informant for the United States Drug Enforcement Administration ("DEA"), met Petitioner at "Unique Styles" ("Unique") clothing store in Geneva, New York. Fantauzzi told Petitioner that he wanted to buy crack-cocaine from him, and the two arranged to meet at Unique the following day to consummate the sale. Trial Transcript (T.T.) 368-72.

On June 20, 2002, prior to the sale, DEA agents outfitted Fantauzzi with a cassette recorder and radio transmitter, and monitored him from a nearby surveillance van. Inside the store, Fantauzzi encountered Petitioner and Herman Parker ("Parker"), the store owner, who Fantauzzi had met twice before. Fantauzzi gave Petitioner $200 in cash in exchange for 3.5 grams of cocaine (commonly referred to as "an eight ball"). During the transaction, Petitioner told Fantauzzi that he had two bags of crack cocaine

2

left over from fifteen bags that he had the day before. Petitioner also asked Fantauzzi whether he would deal drugs for Petitioner at a local bar. After the sale, Fantauzzi was picked up by the DEA agents who retrieved the transmitter and cassette recorder. Fantauzzi also gave them the drugs that he purchased from Petitioner. T.T. 291-98, 341-47, 373-89, 447, 462-63, 502-16, 558-60.

At approximately 4:00 p.m. on June 27, 2002, DEA agents, working with members of the Geneva City Police Department and the Ontario County Sheriff's Office, executed a search warrant at Unique clothing store in Geneva, New York. Present at Unique at the time the warrant was executed were Petitioner, Parker, and two other individuals. When law enforcement officials entered the store, they ordered everyone to lie on the floor. Everyone complied except for Petitioner, who ran to the back of the store and threw a paper towel containing eleven small bags of crack-cocaine onto a stack of shirts. The drugs were recovered, and Parker denied that they were his drugs. The police also seized two utility bills addressed to Petitioner at the Unique street address. Petitioner stated that he was unemployed when he was arrested. T.T. 313-19, 470-78, 498, 518-28, 560-78, 630-50, 690-701.

2. **Petitioner's Case**

Petitioner called Parker to testify in his defense. Parker testified that he was serving a six to twelve year sentence for

3

selling crack-cocaine to Fantauzzi on June 6, 13, and 27 of 2002. He admitted to having prior convictions for Criminal Sale of a Controlled Substance and for Criminal Possession of a Controlled Substance. He stated that he had known Petitioner for twenty years and considered him a lifelong friend. He testified that he, and not Petitioner, owned Unique and that he had paid Petitioner to put the store's utility bill in Petitioner's name because Petitioner had better credit. He admitted that he was a drug dealer and indicated that Petitioner was a drug user who had never dealt drugs. T.T. 710-12, 718-27.

On June 27, 2002, Parker began smoking crack-cocaine at 8:00 a.m. and continued throughout the day. Parker recalled that Petitioner arrived at the store one or two minutes before the police executed the search warrant. He further stated that Petitioner did not run to the back of the store when the police entered but immediately complied with the police directive to lie on the floor. Parker said that when the police found the paper towel containing the eleven bags of cocaine, Parker announced "[a]nything you find here belongs to me." Parker claims that Petitioner adamantly denied to the police that he possessed the drugs. T.T. 712-16, 737, 754-65.

### 3. Verdict and Sentencing

On January 24, 2003, the jury returned a verdict of guilty on the charge of Criminal Sale of a Controlled Substance in the Third

4

Degree and two counts of Criminal Possession of a Controlled Substance in the Seventh Degree, and acquitted him of Criminal Possession of a Controlled Substance in the Third Degree. T.T. 911-12. On January 28, 2003, Petitioner was sentenced, as a second felony offender, to eight to sixteen years imprisonment on the sale count and one year on each of the possession counts -- with one year to run consecutive and one year to run concurrent to the sale count. Sentencing Minutes (S.M.) 12-13.

    **B. Petitioner's Direct Appeal**

        **1. Direct Appeal to the Appellate Division, Fourth Department**

In December 2003, Petitioner filed his direct appeal. He argued that: (1) the trial court wrongfully denied Petitioner's application to change counsel; (2) the trial court should have granted Petitioner's motion for a mistrial on the grounds that the prosecution elicited testimony pertaining to Petitioner's uncharged possession of marijuana at the time of the arrest in violation of the trial court's pre-trial ruling; (3) the trial court erred in refusing to order the production of witness statements at an earlier time than required by statute; (4) Petitioner was penalized for exercising his right to go to trial; (5) the trial court wrongfully sentenced Petitioner to a consecutive sentence on one of the drug possession counts; and (6) the sentence was excessive.

5

The People conceded that Petitioner's misdemeanor possession sentences should run concurrent to the felony sale charge. See Respondent's Brief on Appeal, Point V.

On April 30, 2004, the Appellate Division, Fourth Department, modified Petitioner's sentence and, as modified, unanimously affirmed Petitioner's conviction. Shorter v. Corcoran, 6 A.D.3d 1204 (4th Dept. 2004).

### 2. Leave to Appeal to the New York Court of Appeals

On May 7, 2004, Petitioner, through counsel, moved for leave to appeal the Appellate Division's decision. Petitioner also submitted a pro se application for leave to appeal which included an unfiled pro se supplemental brief. See Petitioner's Letter Application for Leave to Appeal (Leave App.) of 05/30/04. Leave request was denied. Shorter v. Corcoran, 3 N.Y.3d 648 (N.Y. 2004).

### C. Petitioner's Motion for a Writ of *Error Coram Nobis*

On August 5, 2004, Petitioner moved the Appellate Division, Fourth Department for the issuance of a writ of *error coram nobis* on the grounds that he was denied effective assistance of appellate counsel. On December 30, 2004, the Appellate Division, Fourth Department, summarily denied the motion. People v. Shorter, 13 A.D.3d 1235 (4th Dept 2004). Leave to appeal was denied on February 26, 2005. People v. Shorter, 4 N.Y.3d 803 (N.Y. 2005).

**D. The Habeas Corpus Petition**

On June 10, 2005, Petitioner filed the habeas corpus petition presently before this Court, in which he makes four claims. Two of these claims are exhausted and properly before this Court. See 28 U.S.C. § 2254(b)(1)(A). The remaining claims, which Petitioner failed to properly exhaust in the state courts, are deemed exhausted but procedurally defaulted. See § 2254(b)(1)(B); see Grey V. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).

**III. General Principles Applicable to Habeas Review**

**A. The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S.

7

362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness

8

by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.  Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

**IV. Petitioner's Claims**

    **1. Ground One - Ineffective Assistance of Trial Counsel**

Petitioner claims that he was denied his right to effective assistance of counsel because the trial court refused to discharge his fourth attorney (David Morabito). Throughout the course of his case, Petitioner was assigned, and subsequently had discharged three attorneys who were not to his liking, including a Mr. Dressner (appeared with Petitioner at the grand jury), George Newton (represented Petitioner at the arraignment), and Jethro Loftus. In particular, Petitioner argues that he did not receive effective assistance from counsel because Morabito was "intimidated" by him and reluctant to visit him in prison. Petition (Pet.) ¶22A. Petitioner raised this claim on direct appeal to the Appellate Division. The Appellate Division denied this claim on the merits, finding that

> [c]ontrary to the contention of defendant, County Court did not abuse its discretion in denying his repeated requests for substitution of counsel for defendant's fourth assigned attorney inasmuch as defendant failed to show 'good cause for substitution,' such as conflict of interest or irreconcilable conflict with counsel' (internal citations omitted). Although defense counsel admitted that he failed to visit defendant at the jail, defense counsel advised the court that their level of communication had improved prior to trial. In addition, defendant's disagreement with defense counsel with respect to trial strategy and tactics is not a sufficient basis for substitution of counsel (internal citations omitted).

Memorandum and Order of April 30, 2004.

10

The Sixth Amendment grants the accused in a criminal matter the right to be represented by counsel at trial. U.S. Const. Amend. VI. This encompasses the right to conflict-free representation by counsel who will act with a single-minded devotion on his or her own client's behalf. See Wood v. Georgia, 450 U.S. 261 (1981). It does not, however, guarantee a "meaningful relationship" between defendant and counsel. See Morris v. Slappy, 461 U.S. 1, 13-14 (1983). Accordingly, "once trial has begun, a defendant has no 'unbridled right to reject assigned counsel and demand another' and . . . courts must impose restraints on the right to reassignment of counsel in order to avoid the defendant's manipulation of the right 'so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.'" United States v. John Doe No. 1, 272 F.3d 116, 122 (2d Cir. 2001)(quoting McKee v. Harris, 649 F.2d 927, 931 (2d Cir. 1981), cert. denied, 537 U.S. 851 (2002)).

To determine whether a trial court abused its discretion by denying a motion to substitute trial counsel, the reviewing court must consider: (1) whether the defendant made a timely motion for new counsel; (2) whether the trial court adequately inquired into the matter; and (3) whether the conflict was so great as to result in a total lack of communication preventing an adequate defense. United States v. Simeonov, 252 F.3d 238, 241 (2d Cir. 2001) (internal citations and quotations omitted); accord John Doe No. 1, 272 F.3d at 122.

Here, although Petitioner's motion for new counsel was timely, the trial court's decision to deny Petitioner's motion did not constitute an abuse of discretion.

Regarding the second factor, the trial court did not summarily deny Petitioner's motion. Rather, the record indicates that the trial court adequately inquired into the substitution application by permitting Petitioner to explain his motion on the record, and permitting counsel an opportunity to respond. <u>See</u> Motion Transcript (M.T.) of 01/06/03, 2-4; T.T. 256-261. It was only after conducting this inquiry that the trial court determined that the requisite irreconcilable differences necessary to grant discharge of Petitioner's counsel were not present. M.T. of 01/06/03, 2-3; T.T. 256-261. In addition, immediately before trial began, counsel indicated, on the record, that he was fully prepared to represent Petitioner and to commence the trial. T.T. 261.

Third, Petitioner has not shown that a conflict existed, or that any conflict "prevent[ed] an adequate defense." <u>Morris</u>, 461 U.S. at 2. Counsel indicated to the trial court that he and Petitioner had improved their communication. T.T. 261. Furthermore, the record reflects that counsel carried out his professional duties by cross-examining witnesses, producing Parker (whose testimony most likely contributed to Petitioner's acquittal of the felony possession count), making appropriate objections to

the prosecution's examination of witnesses during trial, and delivering a well-reasoned summation.

Accordingly, the Appellate Division's determination that the trial court appropriately denied Petitioner's motion to substitute counsel did not contravene or unreasonably apply Supreme Court law.

### 2. Ground Two - That Prosecution Failed to Produce Rosario Material Earlier than Required by Statute

Petitioner contends that he was denied his right to a fair trial when the prosecution failed to produce Rosario[1] material before the time required under New York's Criminal Procedure Law. Pet. ¶22B. Petition raised this claim on direct appeal to the Appellate Division, and the Appellate Division denied the claim on the merits.

Respondent asserts that this claim in unexhausted because the argument advanced by Petitioner in the state courts consisted solely of a critique of New York state law. Respondent's Memorandum of Law (R.M.), 10. As such, Petitioner failed to apprise the state courts of the federal constitutional issue. See Grey, 933 F.2d at 120. This Court agrees.

Petitioner may not file a second direct appeal with the Appellate Division and has already made his one leave application

---

[1] People v. Rosario, 9 N.Y.2d 286 (N.Y. 1961), cert. denied, 368 U.S. 866 (1961) (prosecutor has obligation, prior to trial, to make available to defendant any written or recorded statement made by a person whom prosecutor intends to call as a witness at trial, and which relates to subject matter of witness's testimony).

13

to the New York Court of Appeals to which he is entitled. See Id. (citing New York Court of Appeals Rules § 500.10(a)). Petitioner may also not raise this claim in a motion to vacate since it is record-based and could have been raised on direct appeal. See CPL § 440.10(2)(c). As a result, Petitioner no longer has a state avenue to raise his unexhausted claim and is, therefore, deemed exhausted and procedurally barred. See Teague v. Lane, 489 U.S. 288, 297-98 (1989).

This Court may review Petitioner's unexhausted claim if he can show cause for the procedural default and prejudice resulting therefrom, or that a failure to review his claim will result in a miscarriage of justice. See Murray v. Carrier, 477 U.S. 478, 495-96 (1986). Petitioner, however, has failed to do so. Accordingly, this claim is deemed exhausted and is procedurally barred from habeas review.

### 3. Ground Three - That Petitioner was Penalized for Exercising his Right to Trial

Petitioner asserts that he was penalized for taking his case to trial (as opposed to entering a guilty plea) because he received a longer sentence (eight to sixteen years) after trial -- even after being acquitted of one of the felonies -- than he would have received had he taken the plea (five to ten years). Petitioner raised this issue on direct appeal to the Appellate Division, Fourth Department. The Appellate Division rejected this claim on the merits.

The Supreme Court has "squarely held that a state may encourage a guilty plea by offering substantial benefits in return for the plea." Corbitt v. New Jersey, 439 U.S. 212, 219 (1978) (footnote omitted). Such a bargained-for plea "may obtain for the defendant 'the possibility of certainty . . . of a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty.'" Id. (quoting Brady v. United States, 397 U.S. 742, 751 (1970)). Thus, the fact that Petitioner received a greater sentence after trial does not, in itself, raise a constitutional issue since it was a foreseeable result of a risk he took by refusing the bargained-for plea.

Moreover, there is no basis for this Court to conclude that the sentence Petitioner received showed that the judge retaliated against him for refusing the plea deal. He does not argue that the trial judge was biased against him or vindictive in sentencing, nor does he point to any facts in the record that would tend to show he was punished for proceeding to trial. As the Supreme Court has noted, a defendant in plea bargaining circumstances will often be "confronted with the certainty or probability that, if he determines to exercise his right to plead innocent and to demand a jury trial, he will receive a higher sentence that would have followed a waiver of those rights." Chaffin v. Stynchcombe, 412 U.S. 17, 30-31 (1973) (quotation omitted). Therefore, because Petitioner cannot point to any evidence –- other than the disparity in the sentence he was offered pre-trial and the sentence he

received post-trial -- that would suggest he was punished for electing to proceed to trial, there is no basis for this Court to grant habeas relief.

To the extent that Petitioner alleges constitutional defects in the term of sentence imposed, his claim does not present an issue cognizable on habeas review. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (challenge to term of sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range). Moreover, Petitioner received a sentence more lenient than the sentence authorized by statute for a second felony offender. See Penal Law § 70.06.

Accordingly, this claim must denied.

### 4. Ground Four - That Prosecutor did not Present Sufficient Evidence that Condition of the Narcotics Introduced at the Trial was Unchanged from when Seized

Petitioner asserts that he was deprived of his right to a fair trial because the prosecution did not introduce sufficient proof to support its contention that the drugs introduced in evidence were the same drugs he possessed at Unique on the day the search warrant was executed. Pet. ¶22D. Petitioner raised this claim for the first time in his application to the Court of Appeals for leave to appeal the Appellate Division's affirmance of his conviction. Leave to appeal was denied. Shorter, 3 N.Y.3d at 648. Respondent argues, and this Court agrees, that, under these circumstances, Petitioner has failed to exhaust the claim. See Castille v. Peoples, 489 U.S. 346, 351 (1989); Ellman v. Davis, 42 F.3d 144,

16

148 (2d Cir. 1994), cert. denied, 515 U.S. 1118 (1995) (presenting claim for first time in application seeking discretionary review is inadequate to satisfy the exhaustion requirement if discretionary review is denied).

As noted under section "2" above, Petitioner may not file a second direct appeal with the Appellate Division and has already made his one leave application to the New York Court of Appeals to which he is entitled. See Grey, 933 F.2d 117 at 120 (citing New York Court of Appeals Rules § 500.10(a)). Petitioner may also not raise this claim in a motion to vacate since it is record-based and could have been raised on direct appeal. See CPL § 440.10(2)(c). As a result, Petitioner no longer has a state avenue to raise this unexhausted claim and is, therefore, deemed exhausted and procedurally barred. See Teague, 489 U.S. at 297-98.

This Court may review Petitioner's unexhausted claim if he can show cause for the procedural default and prejudice resulting therefrom, or that a failure to review his claim will result in a miscarriage of justice. See Murray, 477 U.S. at 495-96. Petitioner, however, has failed to do so. Accordingly, this claim is deemed exhausted and is procedurally barred from habeas review.

### V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner has failed to make "a

substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal

Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: September 28, 2009
Rochester, New York